IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROMANTIC TOURS, INC.,
a Florida corporation,

    Plaintiff,

v.                                        CASE NO: 8:10-cv-02321-SDM-TBM

ANASTASIA INTERNATIONAL, INC.,
a Kentucky corporation,

    Defendant,
_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COMPLAINT COUNTS I AND II**

Plaintiff ROMANTIC TOURS. INC. ("RTI") hereby opposes Defendant Anastasia, Inc.'s ("Anastasia's") Motion and Memorandum of Law to Dismiss Counts I and II of Plaintiff Romantic Tours, Inc.'s Complaint (Doc. 9 (hereafter "Mot.")).

**I.   INTRODUCTION**

Defendant Anastasia's motion to dismiss asks the Court to conclude as a matter of law at this earliest of possible stages that the actions that are the subject of RTI's complaint are those solely of "various foreign third parties concerning foreign activity and foreign contracts (to which neither Romantic Tours nor Anastasia is a party)." (Mot. 1). RTI's well-supported allegations paint a different picture. As RTI alleges, Anastasia directly initiated and orchestrated a scheme to tortiously interfere with contracts entered into by RTI in Florida for Anastasia's own commercial benefit. The fact that Anastasia utilized related entities and agents to carry out portions of its scheme holds no particular relevance.

Anastasia also fails to distinguish between legitimate competition that can constitute privileged activity and extortion. Demanding up front that an agency enter into an exclusive contractual relationship is one thing; threatening to withhold substantial sums of money already owed unless the agency breaks off ongoing business with a competitor is quite another.

Finally, Anastasia provides no basis for the Court to dismiss this action under the doctrine of *forum non conveniens*. The mere fact that Anastasia seems to have created an international network for carrying out its scheme does not make the United States an inconvenient venue for this matter between to United States corporations. To the contrary, as alleged in the Complaint, Anastasia's activities in the United States purposely caused everything that followed. RTI expects that the most relevant evidence will be here in the United States. To the extent documents are within the possession or control of entities over which Anastasia exercises control, it will be obligated to produce them in response to RTI's discovery requests.

## II.     LEGAL STANDARD

In analyzing the sufficiency of the allegations in a complaint, "a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P.*, 144 F.3d 732, 735 (11th Cir. 1998). A party moving to dismiss counts in a complaint for failure to state a claim "bears the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Id*. at 735-36.

Even post *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Federal Rules of Civil Procedure "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Thus, the factual allegations need not be detailed; they need only be

"enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010), *quoting Twombly*, 550 U.S. at 555.

## III.   ARGUMENT

### A.   Anastasia's Motion to Dismiss RTI's Claim for Tortious Interference Should be Denied

#### 1.   RTI adequately states a claim for tortious interference.

Count I of RTI's Complaint adequately alleges a claim for Florida tortious interference by Anastasia with RTI's advantageous business relationships. Under Florida law, the relevant elements of tortious interference are:  "(1) the existence of a business relationship …; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Gossard v. Adia Services, Inc.*, 723 So.2d 182, 184 (Fla. 1998).

In the Complaint, RTI alleges in part the following specific allegations of fact:

- Both RTI and ANASTASIA utilize independent agencies located in countries such as Russia and the Ukraine (the "Agencies"). These Agencies represent women interested in relationships and/or marriage with Western men, especially men in the United States of America. (Complaint ¶18).

- RTI has and/or had advantageous business relationships through written contracts with its Agencies entered into in the State of Florida pursuant to which the Agencies have made available women interested in meeting Western men for online correspondence through the Websites. (Complaint ¶42).

- RTI earned money through these business relationships with its Agencies when the Western men corresponding with the women provided by the Agencies through the Websites paid money to RTI for credits that among other things allowed the men to partake in this correspondence. (Complaint ¶43).

- RTI has invested considerable sums of money in developing business relationships with its Agencies. (Complaint ¶44).

- At all relevant times, ANASTASIA was aware that RTI had invested considerable sums of money in developing business relationships with its Agencies and that the

3

- Agencies had entered into contractual relations with RTI as a result of those relationships. (Complaint ¶45).

- ANASTASIA has similar if not identical relationships with Agencies including some of the same Agencies that do business and/or have done business with RTI. (Complaint ¶20).

- ANASTASIA, RTI and other competitors in the industry have not had exclusive relationships with Agencies.  The Agencies have been able to and have contracted with many companies in the industry that serve male Western clients. (Complaint ¶26).

- Upon information and belief, in or about January 2010, ANASTASIA and/or its agent(s) started forcing its Agencies to enter into new written agreements regarding their business relationships.  These agreements did not include any requirement that the women made available by Agencies for inclusion on ANASTASIA's websites appear only on ANASTASIA's websites. (Complaint ¶27).

- Starting on or about April 9, 2010, ANASTASIA caused notices (hereafter the "Notices") to be sent to its Agencies notifying them that ANASTASIA would withhold all commissions already owed by ANASTASIA to the Agencies for prior months unless and until the Agencies stopped permitting women to appear both on ANASTASIA's websites and on competing websites including RTI's Websites. … (Complaint ¶28).

- ANASTASIA's Notices forced many Agencies to choose between terminating their business relationships with RTI in whole or in part and "forfeiting" substantial amounts in commissions already owed to the Agencies by ANASTASIA and/or an agent for ANASTASIA. (Complaint ¶29).

- Agencies that contacted ANASTASIA to complain about ANASTASIA's demands were told there would be no compromises. (Complaint ¶30).

- Soon after, RTI received numerous requests from its Agencies asking that women represented by the Agencies be removed from RTI's Websites. (Complaint ¶31).

- As a result of ANASTASIA's actions, many Agencies abruptly ceased much if not all of the their relations with RTI.  RTI was forced to delete from its Websites literally scores of women with whom RTI clients had ongoing correspondence and/or relationships. (Complaint ¶32).

- ANASTASIA intentionally and unjustifiably interfered with RTI's advantageous business relationships with its Agencies by blackmailing the Agencies into ceasing or lessening their business with RTI to receive commissions from ANASTASIA that ANASTASIA already owed to these agencies. (Complaint ¶46).

- This interference by ANASTASIA was not justified by anything in ANASTASIA's contracts with its Agencies and instead constituted intentional efforts to interfere with RTI's relationships with its Agencies. (Complaint ¶47).

- As a direct and proximate result of ANASTASIA's intentional and unjustified interference with RTI's relationships with its Agencies RTI has suffered damages in excess of $2,000,000. (Complaint ¶49).

RTI's allegations are more than sufficient to plead tortious interference under Florida law and are more than "enough to raise a right to relief above the speculative level." *Speaker*, 623 F.3d at 1380. RTI pleads facts demonstrating its existing business relationships with its Agencies in Russia and the Ukraine. (Complaint ¶¶ 18-19, 42).[1] RTI also pleads specific knowledge by Anastasia of RTI's business relationships with its Agencies. (Complaint ¶¶ 23, 24, 45). RTI pleads specific facts of an intentional and unjustified interference with RTI's relationships by Anastasia in the form of a scheme to improperly withhold significant money already earned by the Agencies unless and until they ceased certain business pursuant to their contracts with RTI despite the fact that Anastasia's contracts with those entities contained no such requirement. (Complaint ¶¶ 27-36, 46-47). Finally, RTI properly alleges resulting damages. (Complaint ¶49).

### 2. Anastasia's economic coercion is not privileged competition.

Accepting RTI's allegations as true, as it must, Anastasia nevertheless claims a "competition privilege" to coerce Agencies to cut-off certain business with companies such as

---

[1] Anastasia complains that RTI should have to identify specifically in its initial pleading the Agencies with which Anastasia specifically interfered. (Mot. 6). The case Anastasia cites for this proposition, *Dunn Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999), is inapposite. In *Dunn*, the Eleventh Circuit found the plaintiffs pleading insufficient because the plaintiff pilots had no business relationships with *any* airline. Thus, it made no difference whether the plaintiff pilots named airlines individually or collectively in their complaint. *Cf. Ethan Allan, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994)("In Florida a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers, but no cause of action exists for tortious interference with a business's relationship to the community at large"); *Bortell v. White Mts. Ins. Group, Ltd.*, 2 So. 3d 1041, 1049 (Fla. 4th DCA 2009)(distinguishing factual situation where business relationships are identifiable, regardless of whether they have been specifically identified). In this case, unlike in *Dunn*, RTI alleges the existence of advantageous business relationships with agencies even though those agencies are not named specifically. RTI did not name these Agencies to delay as long as possible any retributive action Anastasia may take against them. Nevertheless, RTI stands ready and able to identify the relevant Agencies.

RTI before the Agencies can receive significant commissions *they had already earned* and which, according to Anastasia's own contracts with the Agencies, *Anastasia had no legitimate right to withhold*. (Mot. 7-8). Anastasia bases its claim of a "competition privilege" on the at-will nature of the contracts between RTI and its agencies. (Mot. 6). Anastasia misinterprets the relevant law.

Anastasia confuses actual competition with intentional and unjustified coercion. As the Supreme Court of Florida stated in a case on which Anastasia itself relies, "an action for intentional interference is appropriate … if the jury finds that an understanding between the parties would have been completed had the defendant not interfered." *Ethan Allan, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). Thus, regardless the type of contract or arrangement, tortious interference occurs where an unjustified interference disrupts a transaction that likely would have occurred otherwise. *See*, *e.g.*, *United Yacht Brokers, Inc. v. Gillespie*, 377 So. 2d 668, 672 (Fla. 1979)(reversing summary judgment for defendant where it was "entirely reasonable to assume that absent the alleged interference, United would have paid its commission regardless of the enforceability of the agreement with Johnson"); *Charles Wallace Co., Inc v. Alternative Copier Concepts, Inc.*, 583 So. 2d 396, 397 (Fla. 2d DCA 1991)(cause of action properly plead where purchase of copiers by reseller from manufacturer likely would have occurred absent interference by party that negotiated to buy same copiers from reseller, but then purchased directly from the manufacturer).

The facts as alleged by RTI demonstrate that the Agencies likely would have continued their business relationships with RTI as is absent interference by Anastasia. The only question, therefore, is whether Anastasia can establish as a matter of law based on the four corners of RTI's complaint that its interference with RTI's business relationships was justified. *See R-*

*Stream, LLC v. Wingstop Restaurants, Inc.*, Case No. 8:08-cv-2221-T-33EAJ, 2009 WL 3294812, at *6 (M.D. Fla. Oct. 13, 2009)(quotation omitted)(once plaintiff states a prima facie case, the burden shifts to the defendant to establish that the interference was justified); *Greenberg v. Mount Sinai Medical Ctr.*, 629 So. 2d 252, 256 (Fla. 3d DCA1993)(same).  As the Eleventh Circuit has stated, "[t]he question of justification involves a balancing of the interests of the parties and of society as well as consideration of all the circumstances including the methods and means used and the relation of the parties." *Manufacturing Research Corp. v. Greenlee Tool Co.* 693 F.2d 1037, 1040 (11th Cir. 1982)(affirming finding of unjustified interference where competitor's employees claimed without any reasonable basis that competitor was about to introduce competing product).  "Although businesses are accorded leeway in interfering with their competitors' business relationships, they must abide by certain 'rules of combat' and not use improper means of competition." *Id.* (citations omitted).  As one Florida court has explained, "the ultimate inquiry is whether interference by the defendant is sanctioned by the rules of the game. … There can be no tighter test of liability in this area than that of the common conception of what is right and just dealing under the circumstances.  Not only must defendants' motive and purpose be proper but so also must be the means." *Insurance Field Services, Inc. v. White & White Inspection and Audit Service, Inc.*, 384 So. 2d 303, 307 (Fla. 5th DCA 1980)(quotation omitted).  *See also*, *e.g.*, *Charles Wallace*, 583 So. 2d at 397 (tortious interference properly plead where party went behind back of reseller to purchase directly from manufacturer); *Turkey Creek, Inc. v. Londono*, 567 So.2d 943, 948 (Fla. 1st DCA 1990)("In those circumstances in which there is a qualified privilege, the privilege carries with it the obligation to employ means that are not improper"), *aff'd* 609 So. 2d 14 (Fla. 1992).

The main case on which Anastasia relies for its claim that its actions are privileged actually supports RTI, not Anastasia. In *Ferris v. South Florida Stadium Corp.*, 926 So. 2d 399, 402 (Fla. 3d DCA 2006), a lawyer brought a claim for tortious interference with an attorney-client relationship against his ex-client's co-defendant. The ex-client provided services to the co-defendant at the co-defendant's football stadium. Both had been sued in tort for injuries sustained at a football stadium. When the lawyer for the ex-client raised a tax issue in the litigation that was unfavorable to the co-defendant, the co-defendant insisted that the ex-client terminate the lawyer or else cease working at the stadium. The court held that the lawyer's complaint "fails to allege that the [co-defendant] engaged in any conduct proscribed by statute, which constitutes an independent tort, or which might be described as 'bad'." *Id*. In effect, the co-defendant had justifiably indicated that it did not want to do business with a company who's lawyer painted it in such a bad light. Importantly, the court noted with respect to at-will contracts generally that "those who encourage or cause rupture [in the contract] by fraud, *coercion*, or other wronging *are not justified in doing so*." (emphasis added).[2]

Here, RTI clearly alleges that Anastasia exercised coercion by threatening to withhold commissions *already earned* by Agencies unless they stopped dealing with RTI with respect to individuals appearing on the websites of both companies. (Complaint ¶¶28-30, 46). This is not a case where Anastasia approached the Agencies up-front and required that they deal exclusively with Anastasia. Nor is this a case where Anastasia told the Agencies up-front that anyone appearing on Anastasia's websites must appear only on Anastasia's websites. Instead, as RTI

---

[2] The other cases cited by Anastasia are inapposite. The Eleventh Circuit in *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290 (11th Cir. 1998), agreed that a privilege to safeguard one's financial interests can only exist "so long as improper means are not employed." The defendant's actions were privileged because the entity with which it allegedly interfered was its own subsidiary. *Id*. In *MYD Marine Distribs. v. Donovan Marine, Inc.*, Case No. 07-61624-CIV, 2009 WL 701003, at *4 (S.D. Fla. Mar. 16, 2009), unlike here, there was no ongoing relationship with a reasonable expectation of continuing purchases sufficient to constitute a business relationship.

8

alleges, Anastasia entered into contracts with the Agencies that did not require exclusivity, waited for substantial commissions owed to the Agencies to accumulate and then demanded that they stop dealing with RTI with respect to those individuals appearing on the websites of both companies before Anastasia would pay the commissions the Agencies had already earned. (Complaint ¶¶ 26-30, 46-47). (In the context of *Ferris*, the equivalent situation would have arisen if the co-defendant threatened to refuse to pay the ex-client money the ex-client had already earned unless the ex-client fired its lawyer).

Even past surviving Anastasia's attack at this early pleading stage, the question of whether Anastasia's actions were justified is one for a jury. As the Eleventh Circuit has recognized, "when there is room for different views, the determination of whether the interference was improper or not is ordinarily left to the jury, to obtain its common feel for the state of community mores and for the manner in which they would operate upon the facts in question." *Manufacturing Research*, 693 F.2d at 1040, *quoting* Restatement of Torts 2d § 767 comment l; s*ee also International Sales & Serv. Inc. v. Austral Insulated Products, Inc.*, 262 F.3d 1152, 1159 (11th Cir. 2001) (determination of whether interference in a business relationship was justified based on the privilege of competition, *i.e.*, whether the interference was improper or not, is ordinarily left to the jury); *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, Case No. No. 05-21113-CIV, 2007 WL 3232274, at *5 (S.D. Fla. Oct. 31, 2007). For all these reasons, Anastasia's motion to dismiss Count I should be denied.

      **B.**      **Anastasia's Motion to Dismiss RTI's FDUTPA Claim Should be Denied**

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is meant to "protect the consuming public *and legitimate business enterprises* from those who engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or

practices in the conduct of any trade or commerce."[3] *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1292 (M.D. Fla. 2009)(emphasis added), *quoting* Fla. Stat. §501.204(1); *see also Suris v. Gilmore Liquidating, Inc.*, 651 So.2d 1282, 1283 (Fla. 3d DCA 1995). "[A] claim under FDUTPA is not defined by the express terms of a contract, but instead encompasses unfair and deceptive practices arising out of business relationships." *Siever*, 669 F. Supp. 2d at 1292.

Whether conduct constitutes an unfair or deceptive trade practice is a question of fact. *Siever*, 669 F. Supp. 2d at 1292. A practice is deemed unfair when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, or competitors, or other businessmen." *Id.*, *quoting MJS Music*, 2006 WL 1208015, at *2. "In enacting the FDUTPA, the Florida Legislature made clear that the statute should be 'construed liberally' to protect legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *MJS Music*, 2006 WL 1208015 at *2 (quotation omitted). As a result, when considering whether a practice constitutes a FDUTPA violation, "courts have regarded the concept as 'extremely broad.'" *Id.*; *see also Le-Jo's Day v. Le-Jo Enterprises, Inc.*, 521 So.2d 175, 178 (Fla. 3d DCA 1988)(the concept of "unfair and deceptive" is "extremely broad").

To plead a claim under the FDUTPA, a plaintiff must allege: "(1) a deceptive or unfair practice; (2) causation; and (3) actual damages." *Siever*, 669 F. Supp. 2d at 1292. In addition to the allegations reproduced above, RTI makes the following specific allegations of fact:

---

[3] Thus, FDUTPA is more than "a consumer protection law." (Mot. 8). As Judge Moody recognized in *MJS Music Publications, LLC v. Hal Leonard Corp.*, Case No. 8:06-CV-488-T-30EAJ, 2006 WL 1208015, at *1 & n.1 (M.D. Fla. May 4, 2006), the Florida legislature amended FDUTPA in 1991 to broaden the class of protected entities to include "individuals, children, firms, associations, joint adventures, partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations, and all other groups or combinations."

10

- ANASTASIA's actions constitute unfair competition and unfair and deceptive trade practices in that they seek to blackmail the Agencies into ceasing or lessening their business with RTI based on improper threats to withhold from the Agencies substantial sums of money already earned by the Agencies from ANASTASIA. (Complaint ¶53).

- These actions by ANASTASIA have been aimed at misappropriating business from RTI. (Complaint ¶54).

- ANASTASIA's actions occur in trade or commerce that directly and/or indirectly affects the people of the State in Florida. Because of ANASTASIA's actions, RTI's clients within the State of Florida have lost the ability to continue to correspond and/or continue their relationships with women previously available for correspondence on RTI's Websites. (Complaint ¶55).

- As a direct and proximate result of ANASTASIA's unfair and deceptive practices, RTI has suffered injury to its business or property. In particular, and without limitation, RTI has suffered monetary damages from loss of business. (Complaint ¶57).

- ANASTASIA's unfair or deceptive act(s) or practice(s) have caused RTI injury. (Complaint ¶58).

RTI's Complaint describes particularly a scheme by Anastasia to coerce the Agencies to restrict and/or eliminate their ongoing business with RTI before they can receive commissions already earned and owing from Anastasia. Contrary to Anastasia's assertions, RTI's pleading is not a "recitation of elements" (Mot. 9), but a recitation of specific facts that constitute an unfair business practice. Anastasia is certainly put on notice of the "precise misconduct with which it is charged." (Mot. 10). The cases cited by Anastasia regarding pleading specificity are simply not on point. To the extent Anastasia contends that its actions do not constitute "unfair trade practices," Anastasia ignores the sizeable body of case law demonstrating the broad nature of actions creating liability under FDUTPA.

Anastasia's claim that its actions do not satisfy the "trade or commerce" language of FDUTPA (Mot. 10-11) also lacks any rational basis. According to Anastasia's own case law, a claimant need only allege "sufficient facts to show he was aggrieved by an unfair or deceptive

11

act committed by the [defendant] *in the course of trade or commerce*." *Merrill Lynch Business Serv's U.S.A., Inc. v. Performance Machine Systems U.S.A., Inc.*, Case. No. 04-60861-CIV, 2005 WL 975773, at *8 (S.D. Fla. Mar. 4, 2005)(emphasis added). RTI alleges that Anastasia's actions were committed in the course of its online business, which allows Western men interested in forming relationships to correspond and interact with Russian and Ukrainian women provided by the Agencies in question. (*See*, *e.g.*, Complaint ¶¶2,4, 18-20, 27-32). Anastasia's actions involved this very commerce and thus are within the statute.[4]

Anastasia's claim that FDUTPA cannot apply because the conduct allegedly "occurred exclusively outside the [S]tate of Florida" (Mot. 11) is also mistaken. First, Anastasia ignores the facts. Anastasia intentionally coerced the Agencies to reach into Florida with demands that RTI remove from its websites women represented by the Agencies. (Complaint ¶31). Anastasia's conduct was aimed at, intended to result in and resulted in damages to a Florida corporation. RTI's clients, including those in Florida, were barred from continuing to correspond with numerous individuals represented by the Agencies through RTI. (Complaint ¶55). Having taken actions that reached into Florida with the specific intent to harm a Florida entity, Anastasia cannot seriously argue that Florida law should not apply. *See* Fla. Stat. §95.031(1)("A cause of action accrues when the last element constituting the cause of action occurs"; here, the last element constituting the cause of action – damages – occurred in Florida); Fla. Stat. §48.193(1)(b); *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1216 (11th Cir. 1999)("this court consistently has applied the broader construction of subsection (1)(b)" to include those out of state who cause injury in Florida); *White Wave Int'l Labs, Inc. v. Lohan*,

---

[4] As of 2009, no Florida precedent had identified a scenario falling outside of [FDUTPA's definition of] 'trade or commerce'." *James Hinson Elec'l Contracting Co., Inc. v. Bellsouth Telecommunications, Inc.*, 642 F. Supp. 2d 1318, 1329 (M.D. Fla. 2009); *cf. Alvi Armani Med'l, Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1305 (S.D. Fla. 2008)("the definition of 'trade or commerce' is quite broad. Moreover, FDUTPA requires that its provisions 'be construed liberally'").

12

Case No. 8:09-cv-1260-T-33MAP, 2010 WL 3835873, at *3-*4 (M.D. Fla. Sept. 29, 2010)(relying on *Posner* for proposition that "jurisdiction may be had over a non-resident defendant who commits a tort outside of [Florida] that causes injury in the state").[5]

Second, Anastasia's reading of even its own case law is much too narrow. In *Millennium Communications & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs*, 761 So. 2d 1256, 1260-61 (Fla. 3d DCA 2000), the court held that FDUTPA applied to commercial transactions that occurred with consumers who were all located outside of the state. The court noted: "[T]here are no geographical or residential restrictions contained in the express language of [Fla. Stat.] §501.202." *Id*. at 1262. Nowhere does Anastasia cite to any case law suggesting the FDUTPA does not apply to unfair practices aimed at harming an entity in Florida that causes damages in Florida. For all these reasons, Count II is sufficiently plead.

### C. Anastasia Fails to Uphold its Burden to Justify Dismissal Pursuant to the Doctrine of *Forum Non Conveniens*

Anastasia asserts that two of RTI's four causes of action should be dismissed on *forum non conveniens* grounds. It contends that these two particular counts should be litigated piecemeal style in Russia "for the convenience of the parties," while RTI's remaining two causes of action – for which Anastasia has not even sought dismissal – should be litigated in this Court. This attempt by one American company to force another American company to litigate half of its claims (which arise under American law) halfway around the world on the claimed grounds of convenience is facially absurd and should be rejected.

In analyzing an assertion that a case should be dismissed on *forum non conveniens* grounds "[a] court must begin with the assumption it will exercise jurisdiction unless it is

---

[5] Even *Montgomery v. New Piper Aircraft*, 209 F.R.D. 221, 228 (S.D. Fla. 2001), a case on which Anastasia primarily relies (Mot. 12), recognized with respect to another statute that "[i]t is the effect on trade the must occur in Florida, not the actions giving rise to the effect on trade."

13

established, by the defendant, that an injustice would follow." *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015, 1019 (5th Cir. 1981), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982*, 821 F.2d 1147, 1169 (5th Cir.1987). A motion to dismiss based on *forum non conveniens* should be granted only in those rare cases where the defendant satisfies its burden of demonstrating each of the following factors: (i) the existence of an adequate alternative forum; (ii) private interests favor dismissal; (iii) public interests favor dismissal; and (iv) the plaintiff can file in the alternative forum without inconvenience or prejudice. *See Liquidation Comm'n of Banco Intercont'l, S.A. v. Renta*, 530 F.3d 1339, 1356 (11th Cir. 2008). Anastasia has not satisfied even one of these factors. Nor has it overcome the strong presumption that generally attaches to the plaintiff's choice of forum. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica*, S.A., 382 F.3d 1097, 1099, 1101 (11th Cir. 2004)(reversing dismissal; holding that plaintiffs' choice of forum "should rarely be disturbed unless the balance is strongly in favor of the defendant")(internal quotes omitted).

       **1.**     **Russia is not an adequate alternate forum.**

Anastasia bears the burden of demonstrating the adequacy of Russia as an alternative forum for resolution of RTI's claims. *Leon* v. *Millon Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir. 2001). Anastasia cannot satisfy this threshold issue. Events over the last thirty days demonstrate that one may not be assured of due process and a fair hearing of its claims if it is compelled to litigate in Russia. This alone prevents a dismissal on *forum non conveniens* grounds. *See, e.g., Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1084, 1085-1086 (S.D. Fla. 1997)(holding evidence of bias and corruption in Bolivian courts precluded dismissal). The Obama Administration recognized the recent due process problems in Russian courts in stating it was "troubled by the allegations of serious due process violations and what appears to be an abusive use of the legal system for improper ends." *See* December 27, 2010 Statement by the White

14

House Press Secretary, Exhibit 1.  The White House added that Russia failed to keep a commitment to "universal values, including the rule of law[.]"  *See id.*  The same day, United States Secretary of State Hillary Clinton issued a statement noting that there were "serious questions … about the rule of law [in Russia] being overshadowed by political considerations." *See* December 27, 2010 Statement by Hillary Rodham Clinton, Exhibit 2.  The most recent State Department *Report on Human Rights* concludes that "[Russian] law provides for an independent judiciary; however, the judicial branch did not consistently act as an effective counterweight to other branches of government." *See* U.S. Department of State, Bureau of Democracy, Human Rights, and Labor, *Report on Human Rights*, Feb. 25, 2009, p. 10-16, Exhibit 3.  Such reports carry evidentiary weight in considering whether to dismiss a case on *forum non conveniens* grounds.  *See Eastman Kodak*, 978 F. Supp. at 1085-86 (giving weight to the State Department assessment of widespread corruption in Bolivian courts).

But, the Court need not delve into weighing the evidence of whether a Russian venue may preclude RTI from receiving due process.  Anastasia has failed to offer any evidence whatsoever that, despite the recent events in Russia, its courts remain a place where RTI can expect to receive due process.  As a result, Anastasia has not met its burden of persuasion. *See Canadian Overseas Ores, Ltd. v. Compania de Acero del Pacifico*, 528 F. Supp. 1337, 1343 (S.D.N.Y. 1982), *aff'd* 727 F.2d 274 (2d Cir. 1984)("[w]hile we do not hold as a matter of fact that the Chilean judiciary is not independent of the junta or that [plaintiff] could not possibly receive a fair trial there, the doubts raised are sufficiently serious to put the burden on [defendant], the party asserting the appropriateness of the Chilean forum, to demonstrate its adequacy.").

### 2. Even if Anastasia had met the threshold requirements, the private interests require this case to remain in the United States.

Anastasia's argument for the dismissal of part of this action on *forum non conveniens* grounds also fails because the private interest factors heavily favor Florida over Russia. In arguing for a Russian forum, Anastasia completely ignores the United States-based witnesses and evidence. The fact that some witnesses and evidence are located in Russia does not tip the "private factors" balance Anastasia's way. *See Liquidation Comm'n of Banco Intercontinental, S.A. v. Alvarez Renta*, 530 F.3d 1339, 1357 (11th Cir. Fla. 2008)(reversing *forum non conveniens* dismissal where "significant amounts of evidence were located in each country").

Because RTI is a domestic entity, it enjoys a very strong presumption that the chosen forum is appropriate. "This presumption in favor of the plaintiffs' initial forum choice in balancing the private interests is at its strongest when the plaintiffs are citizens, residents, or corporations of this country." *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1270 (11th Cir. Fla. 2009) (quotation and citation omitted). To overcome this presumption, "[c]ourts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion to deny a [United States] citizen access to the courts of this country." *La Seguridad*, 707 F.2d at 1308 n. 7 (citation omitted). Thus, Anastasia is "required to prove 'vexation' and 'oppressiveness' that are 'out of all proportion' to the plaintiff's convenience." *Leon v. Millon Air, Inc.*, 251 F. 3d 1305, 1314-15 (11th Cir. 2001). Instead of meeting this high burden, Anastasia seeks to burden RTI by forcing it to bring half of its claims in Russia. Such a proposition should be rejected. *See, e.g., F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*, Case No. 02-CIV-2936(SAS), 2003 WL 21396658, at *3 (S.D.N.Y. June 17, 2003)(denying motion for dismissal on *forum non conveniens* grounds where plaintiff would have needed to bring suit in multiple countries).

Anastasia's principal private interest argument – that the majority of witnesses and evidence are located in Russia – has no foundation. As Anastasia effectively concedes, possible witnesses reside in at least four countries: the United States, the Seychelles, Ukraine (where some of the agencies are located, (*see* Complaint ¶18)), and Russia. Thus, regardless of the forum, some witnesses may be required to travel and some translation likely will be necessary.[6] More importantly, however, all of the witnesses for the parties are likely to speak English and their testimony, if not in conflict, may largely obviate the need for third-party witnesses. If this case were to be tried in the alternative forum of Russia, however, it is certain that it would be very costly to translate all of parties' witnesses' testimony into Russian. Further, all expert testimony and damages related evidence will almost certainly be in English and will require translation.

A substantial portion, if not the majority, of the evidence is also located in the U.S. RTI is a Florida corporation with its principal place of business in Florida. (Complaint ¶2). RTI suffered damages and lost business principally in the United States. Accordingly, nearly all evidence related to RTI's damages will be in the United States. Anastasia is a Maine/Kentucky company (Mot. 12, Complaint ¶3). Its employees, computers, and records are located in the United States. As alleged in the Complaint, Anastasia already has the key documentary evidence not already in the United States – *its* contracts and the notices *it* sent or caused to be sent to the agencies and its foreign agents. Further, as alleged in the Complaint, Anastasia, through its employees who will be witnesses, directed its misconduct from here in the United States and sent the tortious notices at the heart of two of RTI's causes of action from its United States computers overseas via the domain TOP-DATES.COM. (Complaint at ¶ 33). Anastasia will be responsible

---

[6] Notably, Anastasia fails to identify a single non-party witness it contends would be unwilling to testify. *See Mercier v. Sheraton Int'l, Inc.*, 744 F. Supp. 380, 385-86 (D. Mass. 1990)(movant should produce evidence that it has asked witness to testify and that witness has refused to do so).

for acquiring all documents that it has a legal right to acquire, no matter where those documents may be, including those in the hands of its foreign affiliates. *See*, *e.g.*, *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919 (S.D.N.Y. 1984)(compelling United States corporation to produce documents within the possession of its British affiliate corporation); *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) ("[d]ocuments may be within the control of a party even if they are located abroad")*; cf. In re Grand Jury Proceedings*, 691 F.2d 1384 (11th Cir. 1982)(affirming order compelling production of documents in the Bahamas).

Despite the fact that most of the key evidence and witnesses in this dispute between two American companies is here in America, Anastasia raises the specter that Russian law *potentially could* play a role in the action. Specifically, Anastasia asks the Court to grant it the inference that the tortious "notices" "are likely to be written in Russian" and that Russian law "likely" will apply to its contracts with the agencies. (Mot. 17). Anastasia's request that inferences be granted in its favor on a motion to dismiss, of course, is contrary to the law. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (inferences granted to the plaintiff on a motion to dismiss not the defendant). Anastasia also fails to make any effort to demonstrate the existence of an actual conflict between Russian law and Florida law. In the absence of a showing of an actual conflict, the law of Russia must be presumed to be the same as the law of the forum. *See Proprietors Ins. Co.* v. *Valsecchi,* 435 So. 2d 290, 295 n.5 (Fla. 3d. DCA 1983). Thus, for the purposes of the motion to dismiss, the Court should infer that Florida law governs Anastasia's contracts with the agencies. Finally, Anastasia fails to demonstrate why Russian law would apply to its contracts with the agencies located in the Ukraine.

### 3. The public interest favors Florida over Russia.

The public interest factors similarly warrant rejection of Anastasia's *forum non conveniens* challenge. Anastasia's arguments center principally on the continued myth that this case has minimal connection to the United States. In maintaining this invention, Anastasia continues to ignore that it and RTI are United States corporations, that it acted intentionally from the United States and that the ultimate object of its improper actions was to harm RTI and to wrongfully take business away from RTI in the United States. These facts require Counts I and II of RTI's complaint to be heard here in the United States and not in Russia, the Ukraine, the Seychelles, or some other foreign jurisdiction.

Most significantly, the United States Court of Appeals for the Eleventh Circuit has made it explicitly clear "there is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." *Esfeld v. Costa Crociere, S.P. A.*, 289 F.3d 1300, 1311 (11th Cir. 2002); *SME Racks, Inc.*, 382 F.3d at 1104. This interest is taken into account by the federal *forum non conveniens* standard. *Esfeld,* 289 F.3d 1300 at 1311-1312.

Finally, American law clearly applies to RTI's claims of tortious interference and violation of the FDUTPA. Where a plaintiff's claims are "premised upon American law" and a "considerable amount of underlying activity occurred in the United States," a U.S. forum is warranted. *TNT USA Inc. v. TrafiExpress, S.A. de C.V.*, 434 F. Supp. 2d 1322, 1335 (S.D. Fla. 2006); *see also Liquidation,* 530 F.3d at 1357 ("Although the effects of the fraud were felt mostly in the Dominican Republic, American law properly governs [plaintiff's] claims, militating in favor of an American forum."). The fact that Russian and Ukrainian law may play a minor role in this case does not change the analysis. As the *TNT* Court noted, "[e]ven if foreign law

were to play a role, … [it] is not enough to take away [plaintiff's] ability to litigate the case here in the United States." *TNT USA*, 434 F. Supp. 2d at 1335.

In sum, each and every *forum non conveniens* factor favors RTI's chosen forum. Accordingly, there is no basis upon which to grant Anastasia's motion.

## IV. CONCLUSION

For all of the above reasons, RTI respectfully requests that Anastasia's motion be denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 18, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to Jeffrey S. Boyles, Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A., 255 South Orange Avenue, Suite 1401, Orlando, Florida 32802.

    /s/ *Joseph J. Weissman*
JOSEPH J. WEISSMAN, FBN 0041424
(Trial Counsel)
JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP
403 East Madison Street, Suite 400
Tampa, Florida 33602
E-Mail: josephw@jpfirm.com
(813) 225-2500
(813) 223-7118

CHARLES A. JONES, Esq.
STEVEN W. McNUTT, Esq.
TROUTMAN SANDERS LLP
401 9th Street, NW
Washington, DC 20004
(202) 662-2074
(202) 662-2069

*Attorneys for Plaintiff*

#140380