UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROMANTIC TOURS, INC.,

Plaintiff,

v. CASE NO: 8:10-cv-2321-T-23TBM

ANASTASIA INTERNATIONAL, INC.,

Defendant.
_____________________________________/

**ORDER**

The plaintiff, Romantic Tours, Inc. ("Romantic Tours"), sues (Doc. 1) for tortious interference; a violation of the Florida Deceptive and Unfair Trade Practices Act, Section 501.201 et seq., Florida Statutes ("FDUTPA"); and two violations of the Lanham Act, 15 U.S.C. §§ 1114-18 and 15 U.S.C. 1125(a). The defendant, Anastasia International, Inc. ("Anastasia"), moves (Doc. 9) to dismiss the tortious interference and FDUTPA claims, and the plaintiff responds (Doc. 22) in opposition.

Allegations of the Complaint

Romantic Tours, a Florida corporation based in Dunedin, Florida, operates two international online dating web sites, "www.russianlovematch.com" and "www.hotrussianbrides.com" (the "web sites"). Each web site provides a forum for a man, located in the United States, to communicate and establish a relationship with a Russian or Ukranian woman. Anastasia, a Kentucky corporation with a principal place of business in Maine, competes with Romantic Tours primarily through the web site

"www.anastasiadate.com". Anastasia maintains an office in Moscow, Russia, and the co-founder, owner, and president of Anastasia is Elena Sykes.

Both Romantic Tours and Anastasia retain independent agencies which are located in Russia and Ukraine and which represent women interested in a Western man, particularly a man from the United States. If a man finds a woman on a web site, the woman's agency arranges (after a successful screening) an in-person encounter. No agency deals exclusively with either Romantic Tours or Anastasia. Kirpton, Ltd., an Anastasia-affiliated entity controlled by Sykes, executes each agency agreement on behalf of Anastasia.

Beginning in April, 2010, Anastasia delivered a notice to each agency retained by Anastasia. The notices originated from "top-dates.com," a domain name owned by Sykes. Each notice stated that Anastasia would withhold the payment of commissions that Anastasia owed the agency until the agency ceased business with competing web sites, including the web sites owned by Romantic Tours. Specifically, Anastasia required that the agency not allow a woman who appeared on Anastasia's web site to appear on Romantic Tours' web sites. Each notice included a list of women and demanded the women's removal from the web sites. The notice forced the agency to either terminate Romantic Tours or forfeit the agency's commissions. Anastasia told each agency that complained that "there would be no compromises."

As a result, many agencies abruptly terminated business with Romantic Tours. The terminations forced Romantic Tours to remove from the web sites many women with whom Romantic Tours' customers had established a connection. In April, 2010,

Romantic Tours demanded in a letter to Sykes and Anastasia that Anastasia cease withholding commissions from agencies conducting business with Romantic Tours. In response, Anastasia denied ownership of "www.anastasiadate.com" and asserted that Anastasia possessed no responsibility for the notices.

## Discussion

### *1. Tortious Interference*

A claim for tortious interference requires "'(1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the business relationship.'" Gwynn v. Rabco Leasing, Inc., 2010 WL 1408412, *4 (M.D. Fla. 2010) (quoting Bortell v. White Mountains Ins. Group, Ltd., 2 So. 3d 1041, 1048 (Fla 4th DCA 2009)). "This cause of action requires 'a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.'" 2 So. 3d at 1048 (quoting Ethan Allen Inc., v. Georgetown Manor, Inc., 647 So.2d 812, 815 (Fla. 1994)). A plaintiff cannot state a claim merely by asserting "that the defendant interfered with a relationship between the plaintiff and the public at large . . . ." Sarkis v. Pafford Oil Co., Inc., 697 So. 2d 524, 527 (Fla. 1st DCA 1997)); Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 815 (Fla. 1994); Dunn v. Airline Pilots Ass'n, 193 F.3d 1185, 1191 (11th Cir. 1999) (affirming dismissal based on the plaintiffs' failing to allege an existing

relationship with a particular airline and the plaintiffs' merely alleging interference with the plaintiffs' ability to sell their labor to the general community).

In this instance, Anastasia argues that Romantic Tours must "specifically identify the 'agencies' that Anastasia allegedly interfered with."[1] However, a tortious interference claim requires only an "identifiable," existing relationship, i.e., something more than a past or potential relationship. In this instance, Romantic Tours sufficiently describes existing, identifiable relationships with agencies in Russia and Ukraine. Romantic Tours alleges (1) relationships based on written agreements with several agencies that represent Russian and Ukranian women; (2) notices sent by Anastasia to each agency; (3) requests from certain agencies seeking removal of women from Romantic Tours' web sites; and (4) termination of certain relationships based on the notices and Anastasia's alleged conduct. Accordingly, Romantic Tours alleges facts sufficient to show an existing, identifiable relationship and states a claim for tortious interference.

*2. A Violation of FDUPTA*

The intent of FDUTPA is to "'protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" Siever v. BWGaskets, Inc., 669 F. Supp. 2d 1286, 1292 (M.D. Fla. 2009)

[1] Anastasia also argues justification for the alleged conduct under the "competition privilege." However, as Romantic Tours correctly observes, an evaluation of the "competition privilege" typically resides within the province of the jury. See Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc., 262 F.3d 1152, 1159 (11th Cir. 2001); Mfr. Research Corp. v. Greenlee Tool Co., 693 F.2d 1037, 1040 (11th Cir. 1982).

(quoting Fla. Stat. § 501.204). To state a claim under FDUTPA, the plaintiff must show (1) a deceptive or unfair practice, (2) causation, and (3) damages. 669 F. Supp. 2d at 1292. "'A deceptive practice is one that is likely to mislead consumers. An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Trent v. Mortg. Elec. Registration Sys., Inc., 618 F. Supp. 2d 1356, 1365 (M.D. Fla. 2007) (quoting Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).

Anastasia argues that the FDUTPA claim (1) fails to satisfy Rule 9(b), Federal Rules of Civil Procedure, both because the claim contains "nothing more than a recitation of elements[] supported by mere conclusory statements" and because Romantic Tours fails to identify either a specific agency, agreement, or notice; (2) fails to allege conduct occurring in the course of "trade or commerce" as defined by FDUTPA;[2] and (3) fails to identify conduct (subject to FDUTPA) occurring in Florida. Romantic Tours argues (1) that the complaint contains a "recitation of specific facts that constitute an unfair business practice;" (2) that Anastasia's alleged conduct occurred in the course of Anastasia's online business and fits within FDUTPA's definition of "trade or commerce;" and (3) that FDUTPA applies to Anastasia's alleged conduct because Anastasia "intentionally coerced" each agency to reach into Florida and demand the

---

[2] FDUTPA broadly defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated . . . [and] the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity." Fla. Stat. § 501.203(8).

removal of women from Romantic Tours' web sites and because this "intentional coerc[ion]" caused harm to both a Florida corporation and Florida consumers.

In this instance, Romantic Tours alleges more than conclusory statements and a recitation of elements. Romantic Tours describes the agencies, the agreement with each agency, the contents of the notice allegedly sent to each agency, and the harm sustained as a result of the alleged conduct. Anastasia's alleged conduct occurred in the course of Anastasia's providing a service through Anastasia's online business. Although the alleged conduct occurred outside Florida, each party operates a commercial web site that provides to men in Florida (and throughout the United States) an introduction to women in Russia and Ukraine. Additionally, the complaint alleges intentional, harmful conduct (occurring in the course of trade or commerce) aimed at a Florida corporation and causing harm to Florida consumers. Accordingly, Romantic Tours alleges facts sufficient to support a FDUTPA claim.

*3. Forum Non Conveniens*

Anastasia argues (1) that Russia is "clearly the superior forum" because a claim analogous to the FDUTPA claim is available, (2) that a Russian court will "have greater reach in controlling commercial activity in Russia," (3) that most of Romantic Tours' evidence is probably located in Russia, (4) that most of the agreements "are likely to be written in Russian and will require application of Russian law," (5) that Anastasia's power to compel testimony of foreign witnesses is limited, and (6) that Russia possesses an interest greater than the United States in deciding this dispute. In response, Romantic Tours asserts (1) that Russia constitutes an inadequate forum

because no guarantee of "due process and a fair hearing" exists in a Russian court; (2) that the majority of the evidence is located in the United States; (3) that Anastasia is a domestic entity, incorporated in the United States with employees, computers, and records located in the United States; (4) that Anastasia fails to demonstrate either a basis for concluding that Russian law applies to an agency agreement or a conflict between Russian and Florida law; and (5) that the laws of the United States govern Romantic Tours' tortious interference and FDUTPA claims.

In this instance, the defendant fails to satisfy the burden of showing an available, adequate, and more convenient alternative forum.[3]

## Conclusion

Accordingly, the motion (Doc. 9) to dismiss is **DENIED**.

ORDERED in Tampa, Florida, on February 14, 2011.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

[3] This discussion assumes without deciding the availability of a motion to dismiss because a forum is less convenient (although proper) than a foreign (i.e., in another nation) forum.